IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RACHEL M.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 1:25-cv-00138-RJS-DBP<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Plaintiff Rachel M.[1] appeals Social Security Commissioner Frank Bisignano's decision to deny her claim for Social Security Disability benefits.[2] Defendant Frank Bisignano is the Commissioner of the Social Security Administration.[3] Pending before the court is Plaintiff's Objection[4] to Magistrate Judge Dustin B. Pead's Report and Recommendation (Report),[5] in which Judge Pead recommends Plaintiff's Motion for Review of Agency Action[6] be denied and the Commissioner's decision be affirmed. For the reasons discussed below, the Objection is OVERRULED, the Report is ADOPTED in its entirety.

## BACKGROUND AND PROCEDURAL HISTORY

On June 23, 2020, Plaintiff protectively filed an application for disability insurance

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, Plaintiff is referred to by first name and last initial only. Privacy concerns are inherent in many of the Federal Rules. See, Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] *See* Social Security Act 42 U.S.C. §§ 301 et seq.

[3] *Id.* ¶ 5.

[4] Dkt. 27, *Plaintiff's Objection to the Magistrate Judge's Report and Recommendation* (*Objection*).

[5] Dkt. 26, *Report and Recommendation* (*Report*).

[6] Dkt. 18, *Motion for Review of Social Security Agency Action* (*Motion*).

benefits under Title II of the Social Security Act (SSA) claiming disability since July 17, 2019.[7] On November 18, 2022, following an administrative hearing, a Social Security Administration Administrative Law Judge (ALJ) issued a decision finding Plaintiff was not disabled under the SSA and denying her application for benefits.[8] Plaintiff appealed the adverse decision to the Appeals Council, which subsequently vacated the decision and remanded the case to the ALJ for further proceedings.[9]

A second administrative hearing was held on February 8, 2024.[10] On April 5, 2024, the ALJ again found Plaintiff was not disabled and thus not entitled to benefits under the SSA.[11]

In reaching its decision, the ALJ applied the five-step sequential evaluation process used for adjudicating disability claims.[12] The five-step sequential evaluation process proceeds as follows:

(1) Claimant must not engage in substantial gainful activity;
(2) Claimant must have a severe impairment or combination of impairments;
(3) Claimant's impairment must meet or equal a listed impairment in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526;
(4) Claimant must not have the residual functional capacity to perform their past relevant work; and
(5) The Commissioner must show there are jobs existing in significant numbers in the national economy which the claimant can perform despite their limitations.[13]

The claimant bears the burden of proof at Step One through Step Four, while the Commissioner bears the burden of proof at Step Five.[14]

---

[7] Dkt. 8, *Transcript of the Administrative Record* (*Tr.*) at 300–01.

[8] *Id.* at 133–46.

[9] *Id.* at 153–54.

[10] *Id.* at 51–83 (transcript of February 8 hearing).

[11] Dkt. 1, *Complaint* ¶¶ 6–7; *Tr.* at 30–46.

[12] *Tr.* at 33–35 (citing 20 C.F.R. § 404.1520).

[13] 20 C.F.R. § 404.1520; *see id.* (explaining in detail the five-Step sequential evaluation process); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (same).

[14] *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At Step One, the ALJ determined Plaintiff engaged in substantial gainful activity (SGA) during certain periods of 2020, 2021, 2022, 2023, and 2024.[15] The ALJ concluded Plaintiff was not disabled during these periods.[16] However, the ALJ did identify continuous twelve-month periods where Plaintiff did not engage in SGA.[17] The ALJ's analysis proceeded based on those periods.[18]

At Step Two, the ALJ evaluated the medical severity of Plaintiff's physical and mental impairments.[19] With respect to Plaintiff's physical impairments, the ALJ concluded Plaintiff's "breast cancer status post chemotherapy and radiation, in remission" was a "severe impairment."[20] As for Plaintiff's mental impairments, the ALJ determined Plaintiff did not have a medically severe mental impairment.[21] In reaching this decision, the ALJ analyzed Plaintiff's mental health symptoms, including her diagnosis for adjustment disorder with mixed anxiety and depression.[22] Relying on the opinions of State agency medical consultants Alison Musso and Julia Jacobs, the ALJ found Plaintiff's mental impairment resulted in *no* limitations in understanding, remembering, or applying information and interacting with others, and *mild* limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself.[23] The ALJ deemed the opinion of Plaintiff's therapist, Joseph Larkin, unpersuasive because it was unsupported by the treatment records and inconsistent with Plaintiff's medical records, which

---

[15] *Tr.* at 35.
[16] *Id.*
[17] *Id.* at 36.
[18] *Id.*
[19] *Id.* at 36–39.
[20] *Id.*
[21] *Id.* at 36–38.
[22] *Id.* at 36–39.
[23] *Id.*

showed "largely normal mental status" and "minimal evidence of mental status examination abnormalities despite a lack of inconsistent or ongoing mental health treatment."[24]

Despite finding Plaintiff's mental impairments were non-severe, the ALJ considered the limiting effects of all Plaintiff's impairments in determining Plaintiff's residual functional capacity (RFC).[25] The ALJ explained Plaintiff's non-severe mental impairments "cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to result in more than minimal work-related restriction for a continuous period of at least 12 months, are not expected to result in death, and/or have not been properly diagnosed by an acceptable medical source as defined in the Regulations."[26]

At Step Three, the ALJ considered the entire record and determined Plaintiff lacked an impairment or combination of impairments sufficient to meet or medically equal the criteria of a listed impairment.[27]

Before moving to Step Four, the ALJ concluded Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with certain postural and exertional restrictions.[28] The RFC assessment did not include any workplace limitations related to mental impairments.[29] However, the RFC assessment referenced the ALJ's Step Two discussion of Plaintiff's non-severe mental impairments.[30]

Finally, the ALJ's Step Four analysis concluded Plaintiff was "capable of performing

---

[24] *Id.* at 37.

[25] *Id.* at 39. The ALJ explained, "An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Id.* at 34.

[26] *Id.* at 38–39, 3–44.

[27] *Id.* at 39–44.

[28] *Id.* at 39.

[29] *See id.* at 39–44.

[30] *Id.* at 41.

past relevant work as a loan application clerk."[31] Accordingly, the ALJ determined Plaintiff was "not disabled" as defined in the SSA from July 2019 through the date of its decision.[32]

Plaintiff appealed the ALJ's second adverse decision, and on April 23, 2025, the Appeals Council denied Plaintiff's request for review.[33] The April 2024 ruling subsequently became the Commissioner's final decision.[34]

On September 18 2025, Plaintiff filed her Complaint in this court.[35] Plaintiff alleges she is entitled to Title II and Title XVI benefits.[36] On March 3, 2026, Plaintiff filed her opening brief seeking review of the Commissioner's decision.[37] Plaintiff contends the ALJ erred by (1) failing to include psychologically based restrictions in the RFC, or specifically explain their omission, and (2) not providing a more detailed Step Four assessment of Plaintiff's residual capacity to perform past work.[38] The Commissioner filed a response on May 30, 2026, arguing the ALJ applied the proper legal standards and substantial evidence supported his findings.[39]

On August 3, 2026, Judge Pead issued the Report recommending the undersigned affirm the Commissioner's decision.[40] On August 17, 2026, Plaintiff filed a timely Objection to the

---

[31] *Id.* at 44–45.

[32] *Id.* at 45.

[33] *Tr.*, at 13–15.

[34] *See* 20 C.F. R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.").

[35] *Complaint*.

[36] *Id.* ¶ 11.

[37] *Motion*; *see also* 42 U.S.C. § 405(g).

[38] *Motion* at 10–15.

[39] Dkt. 24, *Commissioner's Brief*.

[40] *Report*.

Report.[41] The Report and Objection are fully briefed and ripe for review.[42]

## LEGAL STANDARD

Federal Rule of Civil Procedure 72 allows parties to file "specific written objections to the proposed findings and recommendations."[43] The standard of review applied in considering objections to a magistrate judge's report and recommendation depends on whether a party lodges an objection to it.[44] "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."[45] To qualify as proper, the objection must be both timely—that is, made within fourteen days—and "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute."[46]

As for portions of a report and recommendation to which no objections have been raised, this court reviews the magistrate judge's findings for clear error.[47] The Supreme Court has suggested no further review by the district court is required, but neither is it precluded.[48]

---

[41] *Objection*.

[42] *See Report*; *Objection*; Dkt. 28, *Response to Plaintiff's Objection to Report and Recommendations* (*Response*).

[43] Fed. R. Civ. P. 72(b)(2).

[44] *See id.* 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

[45] Fed. R. Civ. P. 72(b)(3); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court.") (citations omitted).

[46] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996); *see also id.* ("[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

[47] *See, e.g.*, *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made [to a magistrate judge's report and recommendation], the district court judge reviews those unobjected portions for clear error.") (citations omitted); *see also* Fed. R. Civ. P. 72(b) Advisory Committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879).

[48] *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("The [Federal Magistrate's Act] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection."); *id.* at 154 (noting that "it is the district court, not the court of appeals, that must exercise supervision over the magistrate," so that "while the statute does not require the judge to review an issue *de novo* if no objections are filed,

A district court has jurisdiction to review the final decision of the Social Security Commissioner.[49] However, the court affords the Commissioner significant deference in reviewing a claim. For example, the court may only determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.[50] In other words, the court considers "whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but . . . will not reweigh the evidence or substitute [the court's] judgment for the Commissioner's."[51]

The Supreme Court has compared the "substantial evidence" test used to evaluate factual findings to review under a clear error standard.[52] As the Court recently explained in *Biestek v. Berryhill*,[53] "whatever the meaning of 'substantial' in other contexts," in the context of judicial review of Social Security decisions, the threshold "is not high."[54] More pointedly, as long as there is "more than a mere scintilla" of evidence that "a reasonable mind might accept as adequate to support a conclusion," the district court must affirm the Commissioner's decision.[55] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."[56]

---

it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard").

[49] 42 U.S.C. § 405(g).

[50] *Id.*; *see also, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[51] *Lax*, 489 F.3d at 1084 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

[52] *See Dickinson v. Zurko*, 527 U.S. 150, 153–58 (1999).

[53] 587 U.S. 97 (2019).

[54] *Id.* at 103.

[55] *Id.*

[56] *Lax*, 489 F.3d at 1084 (citation modified).

In determining whether a claimant is disabled under the strict terms of the SSA, the Commissioner must follow the five-step sequential evaluation process.[57] As previously stated, the claimant bears the burden of proving Step One through Step Four, and then the burden of proof shifts to the Commissioner at Step Five to determine if the claimant has the RFC to perform jobs existing in significant numbers in the national economy.[58] Moreover, while the ALJ is required to use techniques set forth in the Social Security regulations to evaluate certain types of medical evidence, the failure to apply such techniques is considered harmless error where "based on material the ALJ did at least consider . . . , [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[59]

## ANALYSIS

The court begins by deciding whether to apply a clear error or de novo standard of review to Plaintiff's Objection. Concluding that Plaintiff's Objection is specific enough to warrant de novo review, the court reviews the Objection under that standard and reviews the remainder of the Report for clear error.

### I. Plaintiff's Objection

Plaintiff objects to the Report's affirmation of the ALJ's decision on three grounds.[60] Plaintiff first argues because the ALJ omitted mental impairment limitations from the RFC, the

---

[57] *See, e.g.*, *id.*

[58] *Id.*

[59] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also, e.g.*, *Armijo v. Astrue*, 385 F. App'x 789, 791–93 (finding an ALJ's failure to evaluate mental health impairment under the special technique of 20 C.F.R. § 404.1520a was harmless when ALJ considered the effects of claimant's impairment on his ability to perform basic work activities).

[60] *Objection* at 2–5.

ALJ was required to provide an explanation for their absence, which he failed to do.[61] Plaintiff additionally argues the Report did not discuss the ALJ's failure to address the mental requirements of Plaintiff's past work.[62] Finally, Plaintiff contends the ALJ should have discussed Plaintiff's testimony regarding her anxiety and depression.[63] The court addresses each argument in turn.

### A. The ALJ Provided Sufficient Explanation for Excluding Mental Limitations from the RFC

The Tenth Circuit requires an ALJ to either include mild mental impairments in their RFC assessment or provide an explanation for their absence.[64] Because the ALJ did not include Plaintiff's mild mental impairments in the RFC,[65] he was required to explain the omission. Plaintiff claims the ALJ failed to provide any explanation.[66]

Plaintiff adopts an inaccurate reading of the ALJ's decision. In assessing Plaintiff's RFC based on reasons outlined in his Step Two analysis, the ALJ adopted the opinions of State

---

[61] *Id.*; *see also id.* at 4 ("[Plaintiff] never argued that paragraph B findings *require* mental limitations in the RFC. [Plaintiff]'s argument is that if no mental limitations are included in the RFC, an explanation for their absence is required.").

[62] *Id.* at 5.

[63] *Id.* at 3.

[64] *See Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2012) (vacating decision to affirm the Commissioner's decision because "the ALJ never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations"); *Willie v. Saul*, No. 19-CV-0329 SMV, 2020 WL 2065286, at *5 (D.N.M. Apr. 29, 2020) (reversing Commissioner's final decision because the ALJ neither accounted for mental limitations identified in step three in the RFC nor explained their omission); *Leyba v. Berryhill*, No. 17-CV-0667 SMV, 2018 WL 2089359, at *3 (D.N.M. May 4, 2018) ("Plaintiff argues that the ALJ, having assessed certain mental limitations, was required *either* to include corresponding limitations in the RFC assessment *or* to explain the omission. The Court agrees.") (citation modified).

[65] *See Tr.* at 39–45.

[66] *See Objection*, at 2 ("[T]he ALJ never explained *why* no mental limitations were included in the RFC."), 4 ("The ALJ's decision in this case includes no such discussion [for why mental limitations were not included in the RFC].").

agency medical consultants and rejected those of Plaintiff's therapist.[67] When reviewing one step in an ALJ's analysis, this court may look to the "ALJ's findings at other steps in the sequential process."[68] In his discussion of Step Two, the ALJ also explained "the limiting effects of *all* the claimant's impairments, *even those that are not severe*, were considered in determining the claimant's residual functional capacity assessed below."[69] The ALJ further noted the "residual functional capacity assessment reflects the degree of limitation [he] found in the 'paragraph B' mental function analysis."[70] These remarks provide (1) evidence that the ALJ considered and rejected inclusion of Plaintiff's mental impairment in the RFC, and (2) a sufficient explanation for why the ALJ omitted mental impairment limitations from the RFC assessment.[71] Accordingly, the Objection is overruled for this reason.

### B. The ALJ Assessed the Mental Requirements of Plaintiff's Past Work

Plaintiff further objects to the Report's lack of discussion of the ALJ's failure to inquire into the mental requirements of Plaintiff's past work as a loan officer to determine "why she could perform that work despite her non-severe mental impairments."[72] Plaintiff argues this case

---

[67] *See Tr.* at 42 ("As detailed in the discussion of the claimant's mental impairment, I am persuaded by the opinions of State agency medical consultants Alison Musso, Ph.D., and Julia Jacobs, Psy.D., but am not persuaded by the opinion of the claimant's therapist, Joseph Larkin, LCSW, for the reasons detailed above.").

[68] *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's finding at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listing impairment."); *Rebecca H. v. Bisignano*, No. 2:24-CV-00825-CMR, 2026 WL 685725, at *3 (D. Utah Mar. 11, 2026) (finding an ALJ's step two discussion coupled with the RFC determination "sufficient to demonstrate that the ALJ considered Plaintiff's non-severe mental impairments as part of the RFC assessment"); *see also Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [an] opinion.").

[69] *Tr.* at 38 (emphasis added).

[70] *Id.*

[71] *See Davis v. Erdmann*, 918 n.1 (10th Cir. 1979) (noting a court will uphold a decision where the ALJ's path of reasoning may "reasonably be discerned").

[72] *Objection* at 5.

is identical to *Farrill v. Astrue*,[73] where the Tenth Circuit vacated the district court's affirmation of the Commissioner's decision in part because "the ALJ made no inquiry into, or any findings specifying, the mental demands of plaintiff's past relevant work, either as plaintiff actually performed the work or as it is customarily performed in the national economy."[74]

Plaintiff's comparison to *Farrill* is misguided. Unlike in *Farrill*, the ALJ here compared Plaintiff's RFC with the physical and mental demands of her past work and determined Plaintiff "is able to perform the loan application clerk position as actually and generally performed."[75] In making this determination, the ALJ relied on the testimony of a vocational expert and Plaintiff herself in determining the position's requirements as performed both generally and as previously performed by Plaintiff herself.[76] Relying only on the bare assertion "the ALJ failed to make any inquiry into the demands of [Plaintiff's] past work as a loan officer despite stating that he did,"[77] Plaintiff provides no basis to question the ALJ's clearly articulated analysis. Therefore, the court overrules the Objection on this ground as well.

**C. Plaintiff Waives Any Argument Not Raised in Her Opening Brief**

Plaintiff takes issue with the ALJ's failure to discuss her testimony about her anxiety and depression.[78] As the Commissioner points out, this issue was not raised in Plaintiff's opening brief.[79] "Issues raised for the first time in objections to the magistrate judge's recommendation

---

[73] 486 F. App'x 711 (10th Cir. 2012).

[74] *Id.*at 713 (quoting *Winfrey v. Chater,* 92 F.3d 1017, 1024 (10th Cir.1996)).

[75] *See Tr.* at 45 ("[I]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find the claimant is able to perform the loan application clerk position as actually and generally performed.").

[76] *Id.* at 44.

[77] *See Objection* at 5.

[78] *Id.* at 3.

[79] *Response*, at 3; *see generally Motion*.

are deemed waived."[80] Accordingly, Plaintiff is precluded from raising this argument as an Objection.

## II. The Remainder of the Report

Having addressed Plaintiff's objection, the court now turns to the remainder of the Report, which it reviews for clear error. After careful consideration, the court finds no clear error in any of Judge Pead's unobjected-to conclusions. Accordingly, the court adopts the rest of the Report in its entirety.

## CONCLUSION

For the reasons explained above, Plaintiff's Objection[81] is OVERRULED and Judge Pead's Report and Recommendation[82] is ADOPTED. The Clerk of Court is directed to close the case.

SO ORDERED this 30th day of October, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[80] *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (citations omitted).

[81] Dkt. 27.

[82] Dkt. 26.